3344.  SEABOARD AIR-LINE RAILWAY *et al. v.* HUNT.

1. The evidence authorizes the verdict.
2. Under the Civil Code (1910), §§ 2782 et seq., an employee (or one in his right) suing for injuries inflicted upon him by the alleged negligent acts of fellow servants in railway employment is not barred from recovery by his contributory negligence, unless it amounts to a failure to exercise ordinary care.
3. Contributory negligence on the employee's part may consist in a violation of a valid rule promulgated by his employer. However, when an employer offers in evidence a rule, for the purpose of showing that the employee has been guilty of negligence by violating it, the employee may avoid the effect of it by showing that the master made it, not in good faith and with the intention that it should be obeyed, but merely for the purpose of shielding himself behind it in the event that an employee, who was expected to violate it, should be injured; or may show that the employer has waived or abrogated the rule by knowingly allowing continuous and customary violations of it by his employees generally.
(a) Where a railway company promulgates rules for the guidance of its employees, they will be most strongly construed against the company, and if it be doubtful whether they cover the act in question, they will not be sufficient to render that act, if committed by the servant, negligence per se.
(b) If it be at all doubtful as to whether the rule was intended to apply to a particular kind of service, and it is shown that both before and after its promulgation that service had been, with the master's knowledge, constantly performed by the employees in violation of the terms of the rule, the evidence of the practice of the employees in this respect is relevant, not only (where a waiver of the rule is relied on) to prove the waiver, but also to aid in the construction of the rule itself.
4. Depositions taken under provisions of the Civil Code for use in a pending case may, in the discretion of the court, be read in evidence, notwithstanding the presence of the witness at the trial.
5. For the court to state to the jury the allegations of the petitioner and the insistences of counsel is not violative of the code section against the judge's expressing or intimating an opinion upon the facts.
6. The trial was free from error, and no reason appears for granting a new trial.

DECIDED JANUARY 15, 1912.

Action for damages; from city court of Cordele—Judge Strozier. March 23, 1911.

*W. H. McKenzie, E. A. Hawkins,* for plaintiff in error.
*F. G. Boatright, J. T. Hill,* contra.

POWELL, J. Hunt was a yardmaster in the service of the defendant company at Cordele. On July 10, 1910, which was Sunday, he received instructions to switch certain cars containing

18

perishable freight, in order that their forwarding might be expedited. In order to place these cars, what is known as a "flying switch" was made. Hunt was on the foot-board of the engine, for the purpose of unloosing the freight-cars from the engine, in order that they might take one track while the engine took the other. A switchman was placed at the switch-stand, in order to turn the switch between the time of the passage of the engine and the time of the passage of the cars. As the engine was passing over the switch it became derailed and threw Hunt from it, and he fell in such manner that, in his efforts to extricate himself, he got into a position in which the moving freight-cars struck him, ran over him, and killed him. His widow sued the railroad company, its section foreman, the engineer in charge of the locomotive, and the switchman who handled the switch. The grounds of negligence alleged were: (1) that the section foreman had allowed the switch-points to become so worn that the switch " split " when the engine ran over it; (2) that the switchman moved the switch while the engine was upon it, so that the forward wheels took one track while the other wheels took the other; (3) that the engineer was running at an excessive speed, so that when the switch was "split" by reason of its worn condition, or by reason of its being moved by the switchman, the injury occurred. The company was also charged with negligence on account of each and all of the acts of these separate employees. At the trial the plaintiff abandoned the charge of negligence as to the worn condition of the switch, and dismissed the section foreman from the case. The jury found a verdict against the company and the switchman, exonerating the engineer. This verdict, in the light of the charge of the court and of the evidence, is necessarily to be construed as a finding that the only act of negligence established was that the switchman moved the switch while the engine was in passage over it, and that the engineer was not guilty of operating the train at an excessive speed. This fact renders it unnecessary for us to discuss or decide some of the points made in the record, relating solely to the other features of the case which were eliminated by the jury's finding in favor of the company as to all grounds of negligence except the act of the switchman. The defendants found liable, having made a motion for a new trial, which was overruled, bring error.

1. Without going into details, it is sufficient to say that the

evidence was in conflict as to whether the switchman moved or could have moved the switch while the engine was in passage. On this point the verdict is conclusive. The only other question raised by the general grounds is whether the plaintiff himself was guilty of such contributory negligence as to bar a recovery on his part. Without enlarging upon the discussion of this question at present, we will simply say that the evidence was such as to justify the verdict, and that the verdict is not without evidence to support it. The case was determinable not under the old law which required an employee, or one suing on his behalf, to show that he was free from fault, or he could not recover for an injury inflicted by the act of a fellow servant, but was governed by the new rule, now embodied in the Civil Code (1910), §§ 2782-7.

2. The plaintiffs in error contend that there was no issue as to the plaintiff's contributory negligence; that concededly he was guilty of such contributory negligence, amounting to a failure to exercise ordinary care, as to bar a recovery under the Civil Code (1910), § 2783. Under that section, contributory negligence amounting to a failure to exercise ordinary care will absolutely bar recovery, while contributory negligence of a less degree will diminish the recovery.

3. The insistence of counsel is that inasmuch as the petition alleges that the plaintiff was engaged in making a " flying switch " at the time he met his death, and inasmuch as it was shown on the trial that the company had a rule, known to him and agreed to by him, prohibiting the making of a "flying switch," his engagement in that act was necessarily contributory negligence, and was as a matter of law the proximate cause of his injury. The defendant in error resists this contention with the counter-contention that the making of the "flying" switch was a remote, and not the proximate, cause of the injury, that the proximate cause was the switchman's negligent act in turning the switch under the engine. Also, that the rule upon the subject did not apply to switch engines shifting cars in the yards, but only to trains, in the sense wherein that term is defined in the rules of the company; and further, that if any such rule was ever applicable to the plaintiff, it had been abrogated by reason of the company's allowing its continuous and constant violation by its employees. We are of the opinion that it was probably a question for the jury as to

whether the making of a " flying " switch was or was not so connected with the act of the switchman as to make it at least a part of the proximate cause.   But be this as it may, there was certainly enough evidence in the record to justify the jury in finding that this practice of making " flying " switches had gone on for such a length of time and with such knowledge on the company's part as to indicate that the rule was not made for the purpose of having it obeyed, and that if it ever had validity, it had been waived.   No proposition is better settled by this court and by the Supreme Court than that if a railroad company makes rules, not for the purpose of having them obeyed, but merely for the purpose of shielding themselves behind them in the event that an employee is injured in violating them, the rules will be disregarded by the court; and further that an abrogation or waiver of the rule may be established by proof that it was constantly and continuously violated with the knowledge of those officers whose duty it was to enforce it, and with their apparent acquiescence.   In this case the particular rule was promulgated in 1908, but a similar rule had been in effect previously, and continuous violations of it were shown both before and after the year 1909.   Specific objection was made to the evidence tending to show a violation before 1908, and also to such of the evidence as tended to show a violation after the death of the employee in this case.   But we think that this evidence was admissible.   It is doubtless true that a railway company, having promulgated a rule and having allowed it to become abrogated by allowing its violation, but being desirous of stopping the practice forbidden by it, may re-promulgate the rule, notifying the employees thereafter that obedience will be insisted upon, and may thus give validity from that time forward, so as to make a further violation of it negligence on the employee's part, provided that the company does thereafter in good faith insist on obedience.   But where, under the rule as originally promulgated, customary violations took place with the company's knowledge, and thereafter the same rule is again promulgated and no change of practice is insisted on, and the same practice of violation continues, the inference becomes almost irresistible that the second promulgation was intended to have no greater effect than the first promulgation had,—that the company did not intend in good faith to enforce it.   The past attitude of the company becomes strongly illustrative of its attitude under the rule as

reissued.  Besides, it is not at all clear in this case that this rule ever had applicability to a yard engine.  Of course, the general doctrine is that the rules are to be construed most strongly against the company promulgating them.  In the rule book of the company this particular rule forbidding running switches was known as rule No. 104 (e), and appeared under the head of "Movement of trains." These same rules give a set of definitions by which the particular rules are to be construed, and the following definitions are to be found: "Train:  An engine, or more than one engine coupled, with or without cars, displaying markers."  "Yard Engine: An engine assigned to yard service and working within yard limits." And rule No. 18 provides that "yard engines will not display markers," thus evincing an intention that a yard engine is not to be regarded as a train, while working within yard limits (as the engine in the present case was working).  And if rule No. 104 (e) relating to "flying" switches refers only to the movement of trains, as it seems to do by being placed under that head, it was not the intention of the rules to forbid such engines, working within yard limits, from making "flying" switches.  It is true that this same rule appeared in the time-table furnished to employees, but this time-table itself made reference to the general rules of the company and purported to quote largely from them, and it seems only fair to construe the rules as found in the time-table in connection with the rule as found in the rule book.  The jury were, therefore, authorized to find that the company did not intend for this rule to apply to its yard engines, this inference being supported both by the ambiguous form in which the rule was promulgated and by the practice of the employees of making "flying" switches in the yards with the knowledge of the company's officers.  This being so, it can not be said that the making of the "flying" switch was the proximate negligent cause of the injury.  The jury might have found that in the absence of a rule on the subject the making of a "flying" switch was negligence, but this question was fairly submitted to them and they found to the contrary.  And, as we have said before, the jury found that the immediate cause of the injury was the switchman's negligent act in turning the switch under the engine as it was passing.  In this view, the making of the "flying" switch was a mere condition of the injury and the negligent turning of the switch the juridic cause.  This disposes not only of one phase

of the question presented by the general grounds, but also controls a number of the special grounds of the motion for a new trial.

4. The testimony of one of the witnesses for the plaintiff had been taken by deposition. The defendant objected to this deposition being read, because the witness was present in court; the insistence being that he should have been put upon the stand, that he might be subjected to cross-examination. The point is directly ruled against the plaintiff in error by the Supreme Court in the case of *W. & A. R. Co.* v. *Bussey,* 95 *Ga.* 584. The party taking the depositions has the right to read them, notwithstanding the presence of the witness at the trial; and if the opposite party desires to cross-examine the witness, it is his privilege to call him to the stand for that purpose.

5. Error is assigned upon the court's stating to the jury the contentions of the plaintiff as made in her petition and as insisted on by her counsel at the trial, the insistence being that this is violative of the statute which prohibits the judge from expressing any opinion upon the facts of the case. It has been repeatedly held that this form of instruction is not violative of the statute.

6. There are several assignments of error relating to the refusal of certain written requests to charge. We have examined these carefully in connection with the general charge, and we find that, so far as they were pertinent and legal, they were fully covered. Indeed, the charge of the court is one of the most magnificent presentations of the law governing cases of this character that it has ever been our privilege to review. It was full, fair, lucid, and errorless. In fine, the case was fairly tried throughout; and while the verdict (for $15,000) is rather large, it is not excessive or beyond what the evidence authorizes. We see no ground for setting it aside.                    *Judgment affirmed.*